UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **BUNK HOUSE CONVERSION INC.,** } } } | |
| **Plaintiff,** } } | |
| v.  } } | Case No.:  **3:22-cv-00449-MHH** |
| **ATAIN SPECIALTY INSURANCE COMPANY,** *et al.*, } } } | |
| **Defendants** } | |

# MEMORANDUM OPINION AND ORDER

Bunk House Conversion, Inc. brought this breach-of-contract case against defendant Atain Specialty Insurance Company after Bunk House suffered a fire loss to property that Atain insured.  Atain has asked the Court to enter judgment as a matter of law in its favor on Bunk House's breach-of-contract claim.  Atain argues that the claim is untimely and that there is evidence that Bunk House's owner

committed arson. (Doc. 14). For the reasons explained in this opinion, the Court denies Atain's motion for summary judgment.[1]

## I.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)). To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information,

---

[1] The Court has subject-matter jurisdiction over this action. Bunk House sued Atain in the Circuit Court of Franklin County, Alabama. (Doc. 1-1). Atain removed the state-court action to federal court pursuant to 28 U.S.C. § 1332. That statute enables federal courts to exercise jurisdiction over state-law claims when the plaintiff and the defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(2). (Doc. 1). Both Bunk House and Atain are corporations. For purposes of diversity jurisdiction, a corporation is a citizen of the state of incorporation and the state in which the corporation has its principal place of business. *Holston Invs., Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1070 (11th Cir. 2012) (per curiam); 28 U.S.C. § 1332(c)(1). Bunk House alleged in its complaint that it is an Alabama corporation doing business in Alabama. (Doc. 1-1, p. 5, ¶ 1). In the notice of removal, Atain asserts that it is incorporated in and has its principal place of business in Michigan. Therefore, Bunk House and Atain are citizens of different states. More than $75,000 is in dispute in this action.

2

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). "[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of certain evidence, the court cannot make credibility determinations; that is the work of jurors. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012) ("Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper.").

Because Atain moved for summary judgment, the Court views the evidence in the light most favorable to Bunk House in this opinion.

## II.

Viewed in the light most favorable to Bunk House, the evidence shows that Danny Emerson started Bunk House Conversion, Inc. in 2001. The company has locations in Beaverton, Alabama and in Red Bay, Alabama. (Doc. 14-1, p. 9, tpp. 29–30). In June of 2017, Mr. Emerson applied for and Atain issued an insurance policy for Bunk House that provided commercial property coverage. (Doc. 26, p. 2; Doc. 14-14). The policy excludes coverage for concealment, misrepresentation, or fraud. (Doc. 14-16, p. 2). Atain renewed this policy in June of 2018 and in June of 2019. (Doc. 26, pp. 1–2; Doc. 26-1, p. 2). The policy was in effect in December of 2019. (Doc. 26, p. 1; Doc. 26-1, p. 2)

In December of 2019, a fire damaged Bunk House's Red Bay facility. Benny Johnson, Bunk House's property manager, learned of the fire when he arrived at work on the morning of December 9, 2019, and saw what appeared to be a leak coming from the building. (Doc. 14-11, p. 3, tpp. 6–8; Doc. 14-11, p. 6, tp. 19). Mr. Johnson determined that the water was coming from the building's sprinkler system. (Doc. 14-11, p. 4, tpp. 10–12). Only Mr. Johnson and Mr. Emerson had keys to the building. (Doc. 14-1, p. 5, tp. 16; Doc. 14-11, p. 12, tp. 42). Mr. Emerson was in Mexico when Mr. Johnson discovered that there had been a fire. (Doc. 14-1, p. 12, tpp. 43–44). Mr. Johnson asserts that there was no indication that someone tried to break into the building, but the rollup door to the building was open

4

approximately three feet when he arrived. (Doc. 14-11, p. 4, tpp. 11–12). According to Mr. Johnson, the rollup door was closed when everyone left work the preceding Friday. (Doc. 14-11, p. 4, tp. 11).

Atain hired David Cantrell, a cause and origin expert, to investigate the fire. After investigating the scene of the fire, Mr. Cantrell concluded that there were "multiple areas of fire origin within the structure as well as multiple non-communicating points of fire origin"; "[t]he non-communicating points of fire origin and irregular melt patters along the floor c[ould] only be attributed to manual ignition of ignitable liquids"; and that "[e]vidence collected indicated that multiple ignitable liquids were used to ignite the motorhome and the melting and discoloration of the floor of the office space was caused by an ignitable liquid poured from the red fuel can." (Doc. 14-13, p. 18). Based upon these findings, Mr. Cantrell classified the fire as incendiary or "deliberately set with the intent to cause a fire to occur in an area where the fire should not be." (Doc. 14-13, p. 18 & p. 18 n. 2).

An RV damaged in the fire was owned by Bunk House and had been pushed inside the shop the Friday before the fire because the RV would not start; no customer-owned RVs were damaged. (Doc. 14-1, p. 15, tpp. 54–55; Doc. 14-11, p. 12, tp. 41). The fire also damaged Bunk House's surveillance system. (Doc. 14-11, p. 10, tp. 33). Mr. Cantrell sent the surveillance system DVR to a lab that was able to recover individual files. (Doc. 14-13, p. 2). According to

Mr. Cantrell, the last hour of video recorded by the surveillance system shows Mr. Emerson "loading boxes in the back of his truck at approximately 7:20 a.m. on December 4, 2019." (Doc. 14-13, p. 2, ¶ 6). Mr. Cantrell asserts that the surveillance system stopped recording shortly after Mr. Emerson walked inside the building at 7:46 a.m. on December 4, 2019. (Doc. 14-13, p. 3, ¶ 7). Mr. Emerson testified that Karen Cornelius, the office manager at Bunk House's Red Bay location, was the only employee who knew how to operate the surveillance system. (Doc. 14-1, p. 4, tp. 12). Ms. Cornelius testified that the surveillance system always was on and that she "suppose[d]" that only Mr. Emerson was allowed to turn it on or off. (Doc. 14-12, p. 5, tp. 14). Ms. Cornelius also stated that the surveillance system was on the Friday before the fire and that she would have noticed if it was off. (Doc. 14-12, p. 5, tpp. 14–15).

During Atain's investigation into the fire, Mr. Emerson sat for an examination under oath. In the examination, Mr. Emerson stated that Bunk House received a $1.95 million loan in December 2019. (Doc. 14-1, pp. 17–18, tpp. 63–65). An appraisal conducted during this loan process found the Red Bay property to be worth $1.2 million. (Doc. 14-3, p. 4). Mr. Emerson did not know the exact amount of a prior note that Bunk House held, but he estimated that Bunk House's total debt included a $250,000 loan for its Beaverton location and the $1.95 million loan Bunk House received in December 2019. (Doc. 14-1, p. 10, tp. 33, p. 17, tp. 63). Atain

asked Mr. Emerson about specific figures in Bunk House's 2018 tax return showing that Bunk House ended 2018 with more than $6 million in debt, had a retained earnings loss of more than $2.5 million, and had lost money in 11 of 14 years between 2005 and 2018. (Doc. 14-1, pp. 18–21, tpp. 68–70, 76–77; *see also* Doc. 14-15). Mr. Emerson stated that he was aware that Bunk House sometimes lost money but was not familiar with the specific figures in the 2018 tax return. (Doc. 14-1, pp. 18–21, tpp. 68–71, 73, 77, 79). Atain asked Mr. Emerson about Bunk House's bank statements, and Mr. Emerson acknowledged that Bunk House had a negative balance at times during 2019 and received a note for $125,000 in September 2019. (Doc. 14-1, pp. 22–23, tpp. 82–86).

Sometime during Atain's investigation, Bunk House submitted to Atain a balance sheet showing that it had over $1.6 million in equity as of December 1, 2019. (Doc. 14-9). Atain contends that it requested additional financial documents after Mr. Emerson's examination under oath, but Bunk House did not provide the documents before Bunk House sued Atain in this action. (Doc. 14, p. 3; Doc. 14-2).

## III.

As noted, Atain contends that Bunk House's breach-of-contract claim is untimely. Atain asserts that under the terms of Bunk House's policy, the company had to bring an action to recover under the policy within two years of December 9, 2019—the date the property damage occurred. (Doc. 14, p. 18). Bunk

7

House did not file this lawsuit until March 7, 2022.  The policy provision on which Atain relies provides:

> No one may bring a legal action against us under this Coverage Part unless:
> 1. There has been full compliance with all of the terms of this Coverage Part; and
> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Doc. 14-16, p. 2, § D(2)).

Atain's contractual time-limit on actions under the policy conflicts with Alabama law.  Alabama law provides a six-year statute of limitations for breach of contract claims.  Ala. Code § 6-2-34(9).  Alabama law voids contract provisions that reduce the applicable statute of limitations:

> Except as may be otherwise provided by the Uniform Commercial Code, any agreement or stipulation, verbal or written, whereby the time for the commencement of any action is limited to a time less than that prescribed by law for the commencement of such action is void.

Ala. Code § 6-2-15.  Courts applying this statute have held that contractual provisions that abbreviate the limitations period for breach of contract claims are void and unenforceable under § 6-2-15.  *See, e.g.*, *Turner v. Westhampton Ct., L.L.C.*, 903 So. 2d 82, 91, 92 n.3 (Ala. 2004) (contractual provision limiting the time to bring breach of warranty action did "not override the 6-year statute of limitations"); *Garcia v. Certain Underwriters at Lloyd's London*, 2017 WL 2304005, at *3 (S.D. Ala. Apr. 13, 2017), report and recommendation

8

adopted, 2017 WL 2304004 (S.D. Ala. May 25, 2017) (explaining that Alabama's six-year statute of limitations for breach of contract actions applies to insurance contracts, so that the two-year limitations period in the insurance policy was void under § 6-2-15); *Water Works & Sewer Bd. of City of Guntersville v. Glass Steel, Inc.*, 2023 WL 3821815, at *9 (N.D. Ala. June 5, 2023) (same). Consistent with these decisions, the two-year limitations period in the insurance policy Atain issued to Bunk House is void under § 6-2-15 and does not override Alabama's six-year statute of limitations for breach-of-contract claims. Therefore, Bunk House's action is timely.[2]

---

[2] Atain relies on case law from states other than Alabama. Under choice of law principles, a federal court must apply the substantive law of the state in which it sits unless a contractual provision calls for application of another state's law. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014). The Court has not found a choice-of-law provision in the insurance contract at issue. In breach-of-contract actions, Alabama applies the law of the place of contracting. *Stovall v. Universal Const. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004). Atain issued the policy at issue to Bunk House in Alabama, so Alabama substantive law applies in this case. *Morse v. Life Ins. Co. of North Am.*, 399 F. Supp. 3d 1236, 1241 (N.D. Ala. 2019) (citing *Macey v. Crum*, 249 Ala. 249, 30 So. 2d 666, 669 (1947) (explaining that Alabama courts consider the "validity and construction" of a contractual limitations provision to be a substantive matter).

The decisions on which Atain relies are distinguishable. *Bollom v. Brunswick Corp.*, 453 F. Supp. 3d 1206, 1230 (D. Minn. 2020) (explaining that under Minnesota law, parties may limit the time in which an action may be brought, so long as the timeframe is reasonable). *See also Jones v. Lockner*, 829 N.W.2d 589 (Iowa Ct. App. 2013) (explaining that under Iowa law, "a contractual UIM limitation matching the two-year statute of limitations for personal injury tort claims is per se reasonable"); *Bethel Vill. Condo. Assn. v. Republic-Franklin Ins. Co.*, 2007 WL 416693, at *1 n. 1 (Ohio Ct. App. Feb. 8, 2007) (Under Ohio law, "[p]arties to an insurance contract may include a provision in the contract that suit against the insurer must be filed within a period of time less than the applicable statute of limitations."); *Infinity Energy Res. v. St. Paul Fire & Marine Ins. Co.*, 2013 WL 3792899, at *4–8 (D. Kan. July 19, 2013) (same under Colorado and Kansas law); *Brick Church Transmission, Inc. v. S. Pilot Ins. Co.*, 140 S.W.3d 324, 329 (Tenn. Ct. App. 2003) (same under Tennessee law).

As for Atain's arson defense, "under Alabama law, an insurer establishes a *prima facie* case of arson for the purpose of denying coverage by proving 'arson by someone, motive by the plaintiff and unexplained surrounding circumstantial evidence implicating the plaintiff.'" *Hillery v. Allstate Indem. Co.*, 705 F. Supp. 2d 1343, 1360–61 (S.D. Ala. 2010) (quoting *Great Southwest Fire Ins. Co. v. Stone*, 402 So. 2d 899, 900 (Ala. 1981)). Atain contends that it has presented sufficient circumstantial evidence that the fire had an incendiary origin, that Mr. Emerson had a financial motive for the fire, and that unexplained circumstantial evidence implicates Mr. Emerson in the fire.

Under Alabama law, a *prima facie* showing "raises an inference that the insured committed arson, so as to enable the insurer to present its arson defense at trial." *Hillery*, 705 F. Supp. 2d at 1361; *see also Auto Club Fam. Ins. Co. v. Mullins*, 2012 WL 6043652, at *6 (N.D. Ala. Nov. 29, 2012) (summary judgment denied where insurer established *prima facie* case of arson based on the insured's denial that he was involved in the fire, reasoning that "summary judgment is an extraordinary remedy in arson cases" and that the insured "is entitled to present his innocence proclamations to a jury"). Even if Atain has presented sufficient evidence to satisfy its *prima facie* burden, substantial questions of material fact remain as to whether Mr. Emerson had a financial motive for arson and an opportunity to cause the fire.

10

For example, Atain argues that Bunk House's representation that it had over $1.6 million in equity in December 2019 contradicts information in the company's 2018 tax return and in bank statements throughout 2019. (Doc. 14, p. 12). A jury must determine whether Bunk House was truthful about its financial condition during Atain's investigation of the fire. *Cf. E. Park, Inc. v. Fed. Ins. Co.*, 794 F.2d 616, 620 (11th Cir. 1986) (finding summary judgment improper on arson defense where inconsistent stories from the plaintiffs created a credibility issue). To the extent a jury finds Atain's evidence of Bunk House's financial troubles credible, a jury must also decide whether to believe Mr. Emerson's assertion that he was not aware of the financial information in Bunk House's 2018 tax return. If a jury finds that Mr. Emerson was not familiar with Bunk House's financial condition, then the jury may infer that Bunk House's finances would not have motivated Mr. Emerson to commit arson.

Similarly, jurors must decide factual disputes about the operation of Bunk House's video surveillance system. (*Compare* Doc. 14-1, p. 4, tp. 12 (statement by Mr. Emerson that Ms. Cornelius was the only individual who knew how to operate the surveillance system), *with* Doc. 14-12, p. 5, tp. 14 (statement by Ms. Cornelius that only Mr. Emerson had the authority to turn off the surveillance system)). And jurors must decide whether evidence that Mr. Emerson and Mr. Johnson were the only individuals who had keys to the building and that there was no sign of forced

11

entry implicates Mr. Emerson in the fire given Mr. Johnson's statement that the rollup door was open about three feet when he arrived at the facility following the fire. (Doc. 14-11, p. 4, tp. 11; *see also* Doc. 14-13, p. 12 (origin and cause report indicating that the smoke demarcation line on the top of the rollup door at Bunk House's facility indicated the door was raised three to four feet at the time of the fire)). Jurors must consider Mr. Emerson's assertion that he left for Mexico the Sunday morning before the fire was discovered. (Doc. 14-1, p. 12, tp. 44). Viewed in a light most favorable to Bunk House, this evidence presents a genuine issue of material fact as to whether Mr. Emerson was involved in setting the fire. Therefore, summary judgment on Atain's arson defense is not proper. *Cf. Auto Club Fam. Ins. Co.*, 2012 WL 6043652, at *6 (quoting *Allstate Ins. Co. v. Jackson*, 2007 WL 3287369, at *7 (S.D. Ala. Nov. 5, 2007)) ("[T]o prevail on summary judgment, the insurer must show more than a mere preponderance of the evidence; rather, it must show that the evidence is 'so overwhelming that [it] is entitled to judgment as a matter of law on the basis of arson.'").

## IV.

For these reasons, the Court denies Atain's motion for summary judgment. (Doc. 14). By separate order, the Court will set this matter for trial.

**DONE** and **ORDERED** this March 8, 2024.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE